# LAMOILLE COUNTY.

## APRIL TERM, 1837.

PRESENT, HON. CHARLES K. WILLIAMS, *Chief Justice.*
    "   SAMUEL S. PHELPS,   } *Assistant Justices.*
    "   ISAAC F. REDFIELD·   }

Lamoille,
*April,*
1837.

## JOHN B. DOWNER *v.* ZELA RICHARDSON.

If one sell the betterments on a lot of land to another, and it is agreed by both parties, that the title is in a third person, and the vendee is to run the hazard of procuring that title, he may take a deed of such third person at any time, and hold the land against the vendor of the betterments, even although he have not paid the vendor the price of such betterments.

If the vendor, in such case, is employed to negociate with the owner of the land for procuring the title, if he is bound to convey immediately to the vendee, his power is revocable and the vendee may take a conveyance of the owner of the land, without the vendor's consent, and hold the land against him, even before he has paid the price of the betterments.

In the case of vendor and vendee of real estate, no right of recovery in ejectment for the lands exists in favor of the former against the latter, unless the vendee fails to perform the contract on his part, and, especially, where the vendor is the occasion of the contract not being carried into full effect, or where he has put it out of his power to perform the stipulations on his part.

VOL. IX.                48

Lamoille,
*April,*
1837.

Downer
*v.*
Richardson.

This was an action of ejectment for lots No. 43 and 44, in the town of Stow. The general issue was pleaded.

The plaintiff proved the defendant in possession of the land, described in his declaration, at the time of the service of the writ.

Plaintiff also gave in evidence a copy of a deed of the same land, from Sessions and Kellogg to the defendant, dated 27th of February, 1834, duly acknowledged and recorded.

Also, a copy of a deed of the same land from Ozias Gallup to said Sessions and Kellogg, dated 9th December, 1833, duly acknowledged and recorded.

The plaintiff, also, introduced testimony, tending to show that in March, 1832, he, as agent for his father, Thomas B. Downer, made a contract with, and sold to said Ozias Gallup, the betterments on the land in question, for about three hundred dollars, that a bond or writing was given to Gallup, by which the said Thomas agreed to deed the land to Gallup, by quit-claim, on payment, by the latter, of certain notes, specified in said bond or writing, and that this writing had been since lost or destroyed. That it was understood at this time, between said John and Ozias, that the title to the land was in Horatio Seymour, and was to be derived from him to said Ozias; but the said John was to negociate with Seymour for the benefit of said Ozias, and, as soon as he could get a deed from Seymour, to convey it to said Ozias. Said Ozias consented to this, as said John could better deal with Seymour than he could. Gallup went into possession of the premises under this contract. The plaintiff further gave in evidence a deed from Thomas B. Downer to himself of the same land, dated in January, 1834, duly acknowledged and recorded.

It was admitted the notes, above named, had never been paid, and the defendant, on being requested, refused to quit the premises, claiming to hold them in his own right, under Seymour.

The defendant gave testimony tending to show that, as early as the year 1826, Seymour claimed title to the premises;—that one Buzzell, about that time, went into possession under Seymour, and from that time various individuals occupied the premises under Seymour,—each predecessor selling and usually conveying the betterments to his immediate successor,—until one Stephen Atwood, who derived title from Luke Atwood, by deed, conveyed the premises to Thomas B. Downer;—that both Stephen and Luke Atwood acknowledged the title of Seymour.

The defendant also gave evidence tending to show that, on the 27th day of October, 1832, Ozias Gallup obtained a deed of the premises from Seymour. The defendant's testimony was objected to by plaintiff, but was admitted by the court.

From this testimony, the court instructed the jury that the defendant would be entitled to recover his costs, if they believed the testimony.

Plaintiff excepted to the charge of the court.

*P. Dillingham, Jr. and O. W. Butler, for plaintiff.*

The plaintiff was entitled to recover, unless the defendant could protect himself by an outstanding title, at the time of plaintiff's putting Gallup into possession, and which he afterwards purchased in.

We insist that defendant should not have been permitted to give this title in evidence, and that, if admitted, it did not legally operate to defeat the plaintiff's claim to the premises.

I. Defendant, having derived his title through Gallup, is situated precisely as Gallup would be, were he defendant, and can set up no other defence, than he might have done, had he been sued before his conveyance of the premises. *Bowker v. Walker,* 1 Vt. Rep. 18. *Reed v. Shepley,* 6 Vt. Rep. 602.

One holding under another, who held under plaintiff, cannot dispute plaintiff's title. *Jackson v. Whitford,* 2 Caines' Rep. 215.

A succeeding tenant is as much affected by the acts and acknowledgments of his predecessor, as though they were his own. 5 Cowen's Rep. 123.    7 id. 323.

II. A person, who has entered into possession under another, and thereby acknowledged his title, cannot set up an outstanding title in a third person. *Jackson, ex dem. Smith, et al. v. Stewart,* 6 Johns. Rep. 34.    *Jackson, ex dem. Davie v. Watts,* 7 id. 157, 186. and note, b.

Possession is sufficient to maintain ejectment against a stranger, and even he may not set up an *outstanding* title against the *disseizee.  Hathaway v. Phelps,* 2 Aik. Rep. 84.

If the defendant, having originally entered under *A*, afterwards take a lease from *B.*, he cannot, in an action of ejectment against him, by a person claiming under *A.*, deny *A's* title, and set up *B's* title, as an older and better one. *Jackson, ex dem. Bowne v. Hinman,* 10 Johns. Rep. 292.

III. All the principles, relating to landlord and tenant, apply to the parties in this case.

Where a person, in the possession of land, enters into a contract for the purchase of it, such act is a recognition of the vendor's title, and precludes the vendee from denying it. And, in case of a forfeiture, he is a mere tenant at will, not entitled to notice to quit; and, on failure to make payments according to the terms of the contract, an action of ejectment lies to recover the possession. *Whitside et al.* v. *Jackson*, 1 Wend. Rep. 418.

On making a contract to purchase land, and taking *possession* under it, though, strictly, the relation of landlord and tenant is not thus created, yet the vendee, in ejectment against him by the vendor, is absolutely estopped from either showing title in himself, or setting up an outstanding title in another. *Jackson, ex dem. Livingston* v. *Walker*, 7 Cowen's Rep. 637. *Jackson, ex dem. Norris, et al.* v. *Smith*, id. 717. *Hamilton* v. *Taylor*, Litt. select Cas. 444—5. *Jackson ex dem. Young & Devereux* v. *Camp*, 1 Cow. Rep. 610. *Bolls et al.* v. *Shield's Heirs*, 3 Littell's Rep. 34. 7 Cowen's Rep. 637.

In the present case, the improvement, or betterments, as they are called, had become vastly more valuable than the mere fee of the land, and, all along, passed by deed. Now, if the Seymour title was still outstanding, could Gallup or this defendant set it up to defeat the plaintiff? We think no one will pretend it. And if they could not, certainly, if there is any force in authorities, their condition cannot be bettered by having purchased it in.

It matters not that plaintiff and Gallup understood, at the time of this contract, that Seymour had, or claimed to have title to the land, which was to be derived to Gallup, because it was expressly agreed that Gallup was not to buy it in, but that *that* was to be done by Downer. There was good reason for this agreement. And now to permit the title purchased in by Gallup, contrary to express agreement, to be set up as a defence to plaintiff's right, would be to permit defendant to take advantage of his own wrong, which the law much abhors.

Had Gallup mortgaged to plaintiff, when he purchased, to secure the notes, could he have resisted that mortgage? If not, in what different relation does he now stand?

IV. When Gallup purchased in Seymour's title, it was merged in the claim of Downer, and enured to his benefit. 3 Johns. Rep. 499. 4 id. 211, 230. 4 Cowen's Rep. 587. 5 id. 130. 6 Vt. Rep. 607.

*L. B. Peck, for defendant.*

I. Both parties claiming title under Seymour, the defendant is entitled to judgment, he having the better right from the common source. *Brooks* v. *Chaplin*, 3 Vt. 281.

II. *Gallup*, under whom the defendant claims, was not put into possession of the land in controversy, as the property of the plaintiff's grantor. The title at the time was admitted to be in Seymour. The plaintiff's grantor claimed no title to the land, but only an interest in the betterments, or improvements, and at the time of the contract, agreed to procure a deed from Seymour to *Gallup*. Under such circumstances, the principle, that the tenant cannot dispute the title of his landlord, does not apply, for here the plaintiff's grantor claimed no *title*. Gallup, in accordance with this contract, having obtained a deed from Seymour, and passed his title to the defendant, the plaintiff's equitable claim for it must give way to the legal title. *Blight's Lessee* v. *Rochester*, 7 Wheat. 335.

III. *Thomas B. Downer*, by the conveyance to plaintiff, put it out of his power to fulfill the contract, and it must be regarded on his part, as an abandonment of the contract. But admitting that the defendant would be estopped from setting up the Seymour deed in a suit by *Thomas B. Downer*, it does not follow that his grantee can take this ground.

The opinion of the court was delivered by

REDFIELD, J. The only question to be determined in this case is, whether the defendant is estopped from disputing plaintiff's title, by notice of the contract with Thomas B. Downer. We think that the doctrine of estoppel does not properly apply to this case, as between these parties.

It is first to be remembered, that Thomas B. Downer purchased his right of the acknowledged tenant of Seymour. He becomes, of course, the tenant of Seymour. He sold to Gallup all his right, *i. e.* the right of becoming Seymour's tenant, or *quasi* tenant, with the right of purchasing the title at its original price. He did not profess to retain any lien upon the land, and, from the very nature of the case, he could not retain any such lien or mortgage. The land was not his. He did not profess to sell it. He had no right to bargain it. He did not bind himself to procure Seymour's title, or that it could be procured at any given price, or indeed, at any price. Of all these Gallup was to run the hazard. Downer offered to negociate with Sey-

Lamoille,
*April,*
1837.

Downer
*v.*
Richardson.

mour, and Gallup consented, but it does not appear that this formed any part of the principal contract. If Downer obtained the title of Seymour, he had no lien upon the deed for his own security, but was bound to convey immediately. Under these circumstances, it would be in vain to pretend that Gallup was not at liberty to purchase the title of Seymour. It was just what, of all things, he would have been expected to do. The authority, which he had conferred upon Downer, to negociate with Seymour, was not obligatory upon Downer, and, of course, was revocable by Gallup, at any moment. By the contract, Gallup became Seymour's tenant, and Downer ceased to be such. Seymour might sell to Gallup or his grantee, but could not, with propriety, sell to any other.

It is to be observed too, that, in all contracts for the sale of real estate, or any interest therein, the vendor cannot put the vendee out of possession of the land, unless the vendee fails to perform the stipulations on his part, while the vendor is still ready and willing to perform on his part. Thus it is evident, that, although this relation has been denominated a species of tenancy, it has very little analogy to the relation of landlord and tenant, until the vendee fails, on his part, to perform the terms of the contract, when the vendor's right arises, and he may disregard the entire contract of sale, and the vendee becomes a tenant at will.

In the present case, the vendor, Thomas B. Downer, had, without the consent of Gallup or his grantor, conveyed to plaintiff all his right in the land, if any he ever had, and thus had, in one sense, put it out of his power to perform the contract on his part, if it is to be treated as a contract to convey an interest in land. This latter view was relied upon by one of my brethren, as confirming the general doctrine of the case. And if it needed confirmation, this would seem to be conclusive.

Judgment affirmed.